111 So.2d 8

**Willie James STEWART et al.**

**v.**

**Horace CHILDRESS.**

**5 Div. 694.**

Supreme Court of Alabama.

April 9, 1959.

Robt. L. Bowers, Gerald & Bowers, Clanton, for appellants.

Speaks & Burnett, Clanton, for appellee.

SIMPSON, Justice.

This appeal is taken from a final decree which overruled complainants' demurrer and exceptions to respondent's cross-bill and answer respectively, denied relief for which complainants had prayed in their bill to quiet title, granted to the respondent the relief prayed for in his answer and cross-bill, decreed that the complainants have no right, title, or interest in the subject property, and quieted respondent's title in and to said property. In the decree it was further ordered that the respondent have and recover possession of the tract of land known as Parcel Number Two.

By agreement of the parties to this litigation, and pursuant to an order of the lower court, an ejectment suit seeking to recover possession of a tract of 77 acres of the subject property, filed by the respondent on February 25, 1957, wherein the defendant was one of the complainants in the present proceeding, was transferred to the equity side of the court and consolidated with a statutory bill to quiet title to the remaining 80 acre tract of the subject property, wherein the respondent was the plaintiff in the ejectment suit. Thus the title to both parcels of property was tried and quieted together in the equity court.

Complainant's bill called upon the respondent Horace Childress to set forth and specify his title, claim, interest, or incumbrance upon the property claimed by complainants, and how and by what instrument the same was derived and created, following the mandate of Section 1110 of Title 7, Code 1940. Respondent's answer responded to this particular paragraph of the bill in the following manner:

"On to wit: November 5, 1943, S. M. Pate, purchased at a mortgage foreclosure sale the property described in the bill of complaint as well as the property described in Case No. 7604 heretofore pending on the law side of this Court and which by agreement of the parties has been consolidated with the instant case. Respondent further avers that on to wit: May 3, 1955, he purchased the following described property from S. M. Pate and wife, Virgie M. Pate: [Here follows a description of one of the parcels of the subject property].

"Subsequently and some time in the fall of 1956, this respondent purchased the balance of the property involved in this suit and more particularly described as follows: [Here follows a description of the other parcel of the subject property]."

Appellant has provided us with an ingenious argument, contending in essence that the part of the answer set out above was insufficient for failing to specifically

avow the character and source of the respondent's title. His rationale is based in part on Section 1111 of Title 7, Code 1940, and on rules enunciated in such cases as Vidmer v. Lloyd, 193 Ala. 386, 69 So. 480; Reeder v. Cox, 218 Ala. 182, 118 So. 338; Adams v. Pollak, 217 Ala. 688, 117 So. 299; Rucker v. Jackson, 180 Ala. 109, 60 So. 139, and Kinney v. Steiner Brothers, 149 Ala. 104, 43 So. 25. On the other hand, there is the case of Rushton v. McLaughlin, 213 Ala. 380, 104 So. 824, which holds that an answer denying each allegation of the bill and demanding strict proof thereof is sufficient and puts in issue complainants' title. If there perchance exists any conflict in the statement appearing in the Rushton case and the authorities advanced by the appellant, it is not necessary to here attempt to reconcile it, as the status of the pleadings in the instant case do not require application of any of the rules contended for.

In complainants' amended bill filed subsequently to the respondent's answer it is averred as follows:

"That it now appears that the respondent traces his claim to a purported foreclosure deed, dated November 5, 1943, and filed on January 8, 1953 and recorded in Book 406 at page 9 in the office of the Judge of Probate Chilton County, Alabama, your complainants aver that said deed recites in its granting clause as follows:

"S. M. Pate, as owner of such Mortgage, does hereby grant, bargain, sell and convey unto the said S. M. Pate, all the right, title, claim and interest of the said Monroe Stewart and his wife, Millie Stewart."

And a written stipulation by counsel for both sides, agreed to and filed in the cause and recited in the note of testimony as follows:

"2. That fee simple title to both parcels of land was vested in one Monroe Stewart on April 26, 1934, and said property had been owned and occupied by him at that time for from sixteen to thirty years subject to any outstanding mortgages.

"3. That said Monroe Stewart was the ancestor, either father, or grandfather, of all of the complainants except Millie Stewart, who was his wife.

"4. That a purported mortgage with both of the above parcels as security was filed for record on April 26, 1934, in Book 244 at page 607 of the Probate Records of Chilton County, Alabama, evidencing a debt of $300.00. Also, another purported mortgage with parcel two as security was filed for record April 5, 1934, in Book 249 at page 85. That said Monroe Stewart died intestate March 19, 1937 leaving all of the complainants as his heirs at law.

"5. That two foreclosure deeds were executed November 5, 1943, conveying both parcels of said property to the purchaser at the foreclosure sale, S. M. Pate. These deeds were filed for record on January 8, 1953, and recorded in Book 406 pages 12 through 14.

"6. S. M. Pate deeded parcel one to the respondent May 3, 1955, as shown in Book 425, page 128; and deeded parcel two to the respondent December 14, 1956, as shown in Book 326, page 147."

■ It would be unduly hypertechnical for us to say now, in view of the allegation in appellants' amended bill and the stipulation, that respondent's answer was deficient in specifying the character and source of his title. We believe that the record thus shows that the appellants were sufficiently informed as to the nature of appellee's claim of title.

■ There is likewise no merit in appellants' contention that the purchaser at

the foreclosure sale, S. M. Pate, acquired no right or title by said deeds because the mortgagor, Monroe Stewart, was deceased at the time the deeds were executed.

█ Appellants rested their claim of title to the subject tracts on the theory of adverse possession for the requisite period under a claim of title by descent cast. It is true, as pointed out by appellants, that under a statutory bill to quiet title, where it is shown that complainant is in the peaceful possession of the land, either actual or constructive, at the time of the filing of the bill and that there was no suit pending to test the validity of the title, a prima facie case is made out, entitling the complainants to relief, and the burden is then upon the respondent to establish his claim to the land. Vidmer v. Lloyd, supra; Smith v. Irvington Land Co., 190 Ala. 455, 67 So. 250; Burkett v. Newell, 212 Ala. 183, 101 So. 836. But when the respondent shows legal title to the land, the burden of avoiding it by showing superior title by adverse possession shifts to the complainant. St. Clair Springs Hotel Co. v. Balcomb, 215 Ala. 12, 108 So. 858, and see Behan v. Friedman, 218 Ala. 513, 119 So. 20. Furthermore, it is well settled that in a proceeding under the statute, "if the averments of the bill and answer conform to the requirements of the statute, the issues involve everything necessary to a determination by the court as to whether the complainant or the defendant has the superior title to the property, and it is proper for the court under the issues thus found to determine in which of the parties the title resides." Grayson v. Muckleroy, 220 Ala. 182, 124 So. 217, 220; Hinds v. Federal Land Bank of New Orleans, 235 Ala. 360, 179 So. 194; Reeder v. Cox, supra; Adler v. Sullivan, 115 Ala. 582, 22 So. 87.

█ The merits of appellants' claim of adverse possession were, therefore, put to issue by appellee's showing of good paper title and his categorical denial in the answer to the bill of complaint as last amended of each and every allegation thereof, including those setting up adverse possession. The allegations of adverse possession were not admitted by such a denial, as appellants contend is the case by applying Equity Rule 25, Appendix, Title 7, Code 1940. Facts relative to the matter of adverse possession would be within the peculiar knowledge of the appellants, not the appellee.

█ In the last analysis, the case is reduced to a question of fact—are all the required elements of title by adverse possession present? Appellee says that the evidence shows that the possession of appellants was permissive, that is, that S. M. Pate, who had bought the mortgage, allowed the appellants to remain on the land with the idea that they would at some time buy the property back from him. But appellants reply with the argument that such a theory of permissive use to negate the adverse possession should have been specially pleaded by the appellee and that in the absence of such a plea, evidence relative to permissiveness of the use of the land by appellants has no effect. We are in disagreement with such a theory. We quote the applicable rule from the case of Dothard v. Denson, 72 Ala. 541:

"The mere possession of land is not *prima facie* adverse to the title of the true owner. *All presumptions and intendments are favorable to the title, and possessions are not presumed to be hostile, but rather in subordination to it.* * * * But, though this presumption attaches to the possession—that it is an occupancy by right—the presumption disappears in the presence of the title. When the title is shown not to attend the possession, but that it resides in another, the law, not favoring wrong, will not presume that the possession was taken, or is held and claimed, in hostility to the title. *The burden of proving the possession adverse—that it was taken and held under a claim of title hostile to the title*

*of the true owner—rests upon the party asserting it.* [Cases cited.]" (Emphasis supplied.)

This principle was reaffirmed in White v. Williams, 260 Ala. 182, 69 So.2d 847. This last cited case also gave expression to the principle that a permissive possession does not ripen into title unless there has been such a repudiation of the permissive possession as to afford notice of an adverse claim. In further illucidating the principle it was also held: Limitations begin to run from the date of notice of hostility but are not operative before hostility is shown, and whether the possession was with the intention of claiming title is generally held to be a question of fact; a permissive occupant cannot change his possession into adverse title no matter how long possession may be continued, in the absence of a clear, positive and continuous disclaimer and disavowal of the title of the true owner brought home to the latter's knowledge; there must be either actual notice of the hostile claim or acts or declarations of hostility so manifest and notorious that actual notice will be presumed in order to change a permissive or otherwise non-hostile possession into one that is hostile.

■ This Court has repeatedly held that where one claims title to land through an unbroken chain of record title against another who relies upon adverse possession under color of title, a very strict burden to establish his title rests upon the one claiming adverse possession. Hagan v. Crowley, 265 Ala. 291, 90 So.2d 760; Spradling v. May, 259 Ala. 10, 65 So.2d 494; Duke v. Harden, 259 Ala. 398, 66 So.2d 899. We said in Spradling v. May, supra [259 Ala. 10, 65 So.2d 498]:

"The law places such a high dignity upon a regular documentary title and requires such strict formalities to evidence it that a necessary con-comitant is that in order to work a divesture of that title by adverse possession, all the essential elements must be proven by the stated measure of proof, and that proof must show that there has been an actual occupancy, clear, definite, positive, notorious, continuous, adverse and exclusive for the requisite period under claim of right of the definite tract involved."

See also Walthall v. Yohn, 252 Ala. 262, 40 So.2d 705; Turnipseed v. Moseley, 248 Ala. 340, 27 So.2d 483, 170 A.L.R. 882.

■ Neither was it necessary for appellee to plead that he was a bona fide purchaser without notice of the purported adverse possession. It is true that the general rule is that one who would assert that he is an innocent purchaser without notice must so aver in his pleading, and this rule applies to a respondent in a proceeding under the statute to quiet title. Reeder v. Cox, supra. Cf. Behan v. Friedman, supra. It would seem that it would beg the question here to require appellee to do so when adverse possession, vel non, is at issue in the case. One should not be required to plead bona fide purchase without notice of adverse possession at the same time he is denying the adverseness of such possession. It is clear that appellee does not come under the classification of "one who would assert that he is an innocent purchaser".

■ We do not think appellants sustained their burden of establishing title by adverse possession. The testimony taken orally before the court below was in conflict, and, having considered it very carefully, we must say that the trial judge was authorized to conclude from the evidence adduced that the possession of appellants was permissive and that there had not been such a repudiation of the permissive possession as to afford notice of an adverse claim. The fact that respondent offered to purchase the property in question

**94**

in 1955 from appellants was only one fact among others which raised opposing inferences to be finally resolved by the decree of the trial judge who heard the witnesses testify and whose conclusion has the force and effect of a jury verdict. According the usual presumption of correctness to the conclusion attained by him, we would not be warranted in disturbing his finding. Parrish v. Davis, 265 Ala. 522, 92 So.2d 897; Spradling v. May, supra; Sieben v. Torrey, 252 Ala. 675, 42 So.2d 621; Cook v. Benton, 250 Ala. 259, 33 So.2d 877.

▮ Appellants apparently place significance to a statement made by counsel for appellee during the taking of testimony from Willie Stewart on direct examination. The witness had been asked about some discussions he had had with the respondent concerning the subject property when the following question was posed:

"Did you and he ever discuss—did you have adjoining land?"

And in the ensuing colloquy counsel for appellee said, "we will stipulate that Munn Steward (sic) [tenant in common with appellants] owned these lands". In the absence of a showing in the record that the lands referred to were the same as the subject parcels, we must presume the obvious—that the counsel for appellee was speaking of some other land adjoining and that he did not admit a fact inconsistent with appellee's primary position. We must also presume that this statement was noticed by the lower court and was given due consideration along with the testimony in arriving at his conclusion.

Since the case is due to be affirmed, we do not reach the matters of accounting, discovery, and other affirmative relief for which prayer was made in appellants' bill.

Affirmed.

LIVINGSTON, C. J., and GOODWYN and COLEMAN, JJ., concur.